IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WORTH COLLECTION, LTD.,<br>    Debtor | Chapter 7<br>Case No. 20-10337 (BLS) |
| DOUGLAS T. TABACHNIK, in his capacity as the Chapter 7 Trustee of the bankruptcy estate of The Worth Collection, Ltd.,<br><br>                Plaintiff,<br>     v.<br><br>CAROLINE DAVIS, *et al.*,<br><br>                Defendants. | Adv. Pro. No. 23-50319 (BLS)<br>D.I.'s 66, 67, 68, 69, 70, 71, 77, 77,<br>80, 81, 82 |

## MEMORANDUM OPINION DENYING
## DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT[1]

Douglas T. Tabachnik, in his capacity as the Chapter 7 Trustee of the Worth

Collection, Ltd. (the "Trustee"), filed this adversary proceeding against Caroline

Davis and fourteen other individuals.[2] After the Court granted the Defendants'

motion to dismiss Counts I, II and III of the original complaint,[3] the Trustee filed an

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334(b). These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(O). Venue is proper in this district under 28 U.S.C. § 1409(a).

[2] The Defendants in this adversary proceeding are Caroline Davis, Jay Rosenberg, David DeFeo, Sandra Kim-Suk, Seth Grossman, Courtney Denby, Kelly Collins, Michael J. Farello, J. Michael Chu, Scott Dahnke, Dirk Donath, James Hexter, Julian C. Mack, Andrew C. Taub, and Nikhil Thukral. The Complaint also lists John Does 1-10, Doe Corporations 1-10, Doe Limited Partnerships 1-10, and Doe Limited Liability Companies 1-10 as defendants.

[3] Adv. Docket Nos. 50, 51 (the "Prior Dismissal Opinion"). The Opinion and Order allowed the Trustee to file an amended complaint.

Amended Complaint.[4] Before the Court are three motions to dismiss the Amended Complaint: one filed by the Catterton Defendants,[5] one filed by the Davis Group Defendants,[6] and one filed by Kelly Collins.[7] The Trustee filed a Memorandum of Law in opposition to the Motions to Dismiss.[8] The Moving Defendants filed Reply Memoranda.[9] For the reasons set forth below, the Court will deny the Defendants' Motions to Dismiss the Amended Complaint.

## BACKGROUND

This Chapter 7 case was commenced by the filing of an involuntary petition on February 14, 2020, against The Worth Collection, Ltd. (the "Debtor"). The petitioning creditors were inventory suppliers or service providers to the Debtor's retail clothing sale business. On October 23, 2020, about eight months after the filing of the voluntary petition, the putative debtor filed an answer.[10] Another five months passed before the entry of an order for relief on March 24, 2021.[11] Three

---

[4] The Amended Complaint is filed at Adv. Docket No. 60.

[5] The Catterton Defendants' Motion to Dismiss the Amended Complaint is filed at Adversary Docket Nos. 66, 67, and 68. The "Catterton Defendants" are defined as Sandra Kim-Suk, Michael J. Farello, J. Michael Chu, Scott A. Dahnke, Dirk Donath, James Hexter, Julian C. Mack, Andrew C. Taub, and Nikhil Thukral.

[6] The Davis Group Defendants' Motion to Dismiss the Amended Complaint is filed at Docket Nos. 69 and 70. The "Davis Group Defendants" are defined as Caroline Davis, David DeFeo, Courtney Denby, Seth Grossman, and Jay Rosenberg.

[7] Kelly Collins filed the Motion of Defendant Kelly Collins to Dismiss Amended Complaint, Joinder to Catterton's Memorandum of Law, Joinder to Davis Group Defendants' Memorandum of Law, and Additional Statement in Support of Motion to Dismiss is filed at Docket No. 71. The Catterton Defendants, the Davis Group Defendants, and Kelly Collins may be referred to herein as the "Moving Defendants."

[8] Docket No. 77.

[9] Docket Nos. 80, 81, and 82.

[10] Main Case Docket No. 40. The docket indicates that there were no fewer than fifteen stipulations extending the time for the putative Debtor to answer or otherwise respond to the involuntary petition.

[11] Main Case Docket No. 53.

2

months later, on June 9, 2021, Douglas Tabachnik was elected by the creditors to serve as the Chapter 7 Trustee.[12]

The Trustee filed several adversary proceedings asserting claims arising out of a series of leveraged buy-out transactions undertaken by the Debtor and related entities in September 2016 (the "LBO Transaction"). A description of the factual allegations regarding the LBO Transaction was included in the Prior Dismissal Opinion. The Court assumes the parties are familiar with the allegations in the Amended Complaint and thus will not repeat them here except to the extent necessary for the Court's ruling today.

In summary, the Amended Complaint alleges that the LBO Transaction loaded the Debtor with "enormous and unsustainable loan obligations" of more than $25 million in new debt and encumbered all of the Debtor's assets, while funneling the proceeds of that debt to others, including the Defendants.[13] As a result, the Complaint alleges that the Debtor was left with just over $1 million in cash, which was "grossly insufficient" to cover its operating costs and its post-LBO debt obligations.[14] Ultimately, the Debtor's non-insider and unsecured creditors were left without recourse.[15] The Amended Complaint also alleges that Catterton Management Company, L.L.C. ("Catterton"), the Former Equity Holders,[16] and later New Water Capital Partners, L.P. ("New Water") designed a corporate

---

[12] Main Case Docket No. 87.
[13] Amended Compl. ¶ 49.
[14] Amended Compl. ¶ 50.
[15] Amended Compl. ¶ 51.
[16] The "Former Equity Holders" are defined in the Amended Complaint at ¶ 62 as Worth Acquisition, LLC ("Acquisition"), the Davis Group Defendants, Diana Manley, Wendy Selig-Prieb, Andrea Weiss, and Lamira Fondren.

structure to complete the LBO Transaction and shield equity holders while shifting all risk to the Debtor's creditors in an attempt to make the LBO Transaction bankruptcy-remote and fraudulent-transfer proof.[17]

The Trustee has filed a number of adversary proceedings to avoid and recover as fraudulent transfers the payment of over $39.9 million to the Debtor's Former Equity Holders, as well as other fees and payments made as part of the LBO Transaction. The Trustee filed this Adversary Proceeding to assert a claim for breach of fiduciary duties against the Defendants.

LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and must determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[18] "Without a sufficient factual predicate, a complaint supported merely through the formulaic recitation of the [statutory] factors and conclusory allegations will not survive a motion to dismiss."[19]

The Supreme Court has instructed that a pleading must nudge claims "across the line from conceivable to plausible."[20] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the

---

[17] Amended Compl. ¶ 52.

[18] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018).

[19] *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 176 (Bankr. D. Del. 2020) (citing *In re Liquid Holdings Grp., Inc.*, No. 16-10202 (KG), 2018 WL 6841351, *3 (Bankr. D. Del. Nov. 14, 2018)).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

defendant is liable for the misconduct alleged."[21] The determination is a context specific task, drawing on the reviewing court's judicial experience and common sense."[22]

## DISCUSSION

1. <u>Whether the claim for breach of fiduciary duty is time-barred.</u>

The Moving Defendants argue that the Trustee's breach of fiduciary duty claim is barred by Delaware's three-year statute of limitations.[23] As an initial matter, the Trustee asserts that the Bankruptcy Court, as a court of equity, should analyze the timeliness of a breach of fiduciary duty claim under the doctrine of laches, rather than a statute of limitations, and consider whether the Trustee unreasonably delayed in bringing his claims after learning of them.[24] The Third Circuit Court of Appeals, however, recognized that when a plaintiff seeks "damages

---

[21] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[22] *Ashcroft*, 556 U.S. at 679.

[23] 10 Del. C. § 8106. A breach of fiduciary duty claim under Delaware law is subject to a three-year statute of limitations. *Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC)*, 598 B.R. 150, 167 (Bankr. D. Del. 2019).

[24] The Trustee relies upon *Lebanon County Employees' Retirement Fund*, in which the Delaware Court of Chancery determined that the timeliness of a breach of fiduciary duty claim seeking equitable relief should be assessed by applying the doctrine of laches. *Lebanon Cty. Employees' Retirement Fund v. Collis*, 287 A.3d 1160, 1177 (Del. Ch. 2022). The *Lebanon County* case arises from shareholder claims that the officers and directors of a company that was a wholesale distributor of opioid pain medications "breached their fiduciary duties by making affirmative decisions and conscious non-decisions that led ineluctably to the harm the Company suffered," and the plaintiffs sought to shift the responsibility for that harm from the company to the "human fiduciaries" that caused it. *Lebanon County*, 287 A.3d at 1175. However, the Court in *Lebanon County* also decided that "[w]hen a plaintiff seeks *damages* as a remedy for a breach of fiduciary duty, the court looks to the limitations period that would apply to an analogous claim at law." *Id.* at 1178 (emphasis added). *See also Vichi v. Koninklijke Philips Elec. N.V.*, 2009 WL 4345724, *16 (Del. Ch. Dec. 1, 2009) (Equitable claims bearing a close resemblance to legal claims presumptively are subject to the statute of limitations "and mere invocation of laches terminology will not render them timely.")(citations omitted).

for the defendants' alleged breach of fiduciary duties, [10 Del. C.] § 8106 determines the timeliness of their claims."[25] Here, the Trustee's Amended Complaint seeks monetary damages and it is thus appropriate to consider the timeliness of the Trustee's breach of fiduciary duty claim under Delaware's three-year statute of limitations.[26]

"The limitations period begins from the date of the alleged harm."[27] "Alleged harm means the moment the wrongful act accrues - - not when the harmful effects of the act are felt - - even if the plaintiff is unaware of the wrong."[28]

The Moving Defendants argue that the alleged "wrongful acts" described in the Amended Complaint stem from decisions approving the LBO Transaction, which closed on September 29, 2016. It follows, the Defendants argue, that the three-year statute of limitations expired on September 29, 2019, before the filing of the involuntary bankruptcy petition on February 14, 2020. In response, the Trustee argues that the breach of fiduciary duty claim accrued later, when the injury from the LBO Transaction manifested in the Debtor's inability to pay its creditors,

---

[25] *Cantor v. Perelman*, 414 F.3d 430, 440 (3d Cir. 2005).

[26] *See also Eugenis VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Inv., LLC)*, 524 B.R. 62, 80 (Bankr. D. Del. 2015) ("A court of equity is not bound by the legal statute of limitations. However, '[e]quity follows the law and in appropriate circumstances will apply a statute of limitations by analogy.' Because breach of fiduciary duty claims are 'equitable claim[s] bearing a close resemblance to ... legal claim[s],' a statute of limitations analysis is appropriate here.")(quoting *In re Lyn*, 483 B.R. 440, 452 (Bankr. D. Del. 2012)); *Vichi*, 2009 WL 4345724, at *17).

[27] *W.J. Bradley Mortg.*, 598 B.R. at 167 (citing *AMC Inv.*, 524 B.R. at 80-81).

[28] *W.J. Bradley Mortg.*, 598 B.R. at 167 (quoting *Carr v. New Enter. Assocs., Inc.*, 2018 WL 1472336, *8 (Del. Ch. Mar. 26, 2018))(internal punctuation omitted).

6

compelling creditors to file an involuntary bankruptcy petition. The Trustee argues the Petition Date marks the "time of injury."[29]

The Trustee's Amended Complaint is based on the overall theory that the LBO Transaction loaded the Debtor with enormous and unsustainable loan obligations of more than $25 million in new debt and encumbered all the Debtor's assets, while funneling the proceeds of that debt to others.[30] "When a fiduciary makes an affirmative decision, such as when a board approves a contract or grants an option, the wrongful act takes place when the decision is made, and any cause of action for breach of fiduciary duty accrues at that point."[31] The Amended Complaint alleges that the LBO Transaction is the wrongful act which caused harm to the Debtor's non-insider and unsecured creditors. Accordingly, the date of injury is September 29, 2016 and the limitations period for filing a breach of fiduciary duty claim arising from the LBO Transaction ended on September 29, 2019.

---

[29] The Trustee relies upon *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727 (Del. 2020) in which the Delaware Supreme Court wrote:

> Delaware is an "occurrence rule" jurisdiction, meaning a cause of action accrues at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action. In Delaware, for contract claims, the wrongful act occurs at the time a contract is breached. For tort claims, ... the wrongful act occurs at the time of injury. Stated another way, a cause of action in tort accrues at the moment when an injury, although slight, is sustained in consequence of the wrongful act of another.

*Id.* at 732-33. (internal punctuation and citations omitted). But the Trustee's reliance on *ISN Software* is misplaced. The *ISN Software* Court determined that the limitations period for a malpractice claim started when act causing the injury occurred - - in that case, when a merger that, based on the law firm's alleged problematic advice, gave the largest shareholder appraisal rights. The limitations period did *not* begin years later when the Court of Chancery's appraisal decision set the damage amount. The *ISN Software* Court recognized that "[u]nder the Delaware occurrence rule, injury is distinct from damages," and "regardless of complications, inefficiencies, and possible unfairness, a cause of action accrues at the time of the wrongful act, which in this case means when injury occurred and not when damages were certain." *Id.* at 735.

[30] Amended Compl. ¶ 18.

[31] *Buddenhagen v. Clifford*, 2024 WL 2106606, *22 (Del. Ch. May 10, 2024) (internal punctuation omitted) (citing *Lebanon County*, 287 A.3d at 1196).

But this does not end the analysis. The Trustee argues that, even if the date of injury is the LBO Transaction closing, the statute of limitations in this case should be tolled. Delaware law recognizes three tolling doctrines: equitable tolling, inherently unknowable injuries, and fraudulent concealment.[32] The Trustee argues that two tolling doctrines apply here: equitable tolling and inherently unknowable injury.[33]

Under Delaware law, however, the tolling doctrines will apply "only until the plaintiff discovers (or by exercising reasonable diligence should have discovered) his injury."[34] Thus, regardless of the tolling theory, the limitations period begins to run once the plaintiff is on "inquiry notice" of a possible injury.[35] "Such notice does not require full knowledge of the material facts; rather, plaintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued, would lead to the discovery of the injury."[36]

Thus, the 3-year statute of limitations in this case can be tolled only until a *plaintiff* had inquiry notice of the injury caused by the LBO. But, as other courts

---

[32] *AMC Inv.*, 656 B.R. at 105; *Carickhoff v. Cantor (In re Live Well Fin., Inc.)*, 2023 WL 3995900, *9 (Bankr. D. Del. June 13, 2023) (citing *Gregorovich v. E.I. duPont de Nemours*, 602 F.Supp.2d 511, 518 (D. Del. 2009)).

[33] In a footnote, the Trustee asserts that discovery in this case could also yield a factual basis for arguing that the Defendants fraudulently concealed the Debtor's insolvency from creditors.

[34] *Miller v. Kirkland & Ellis LLP (In re IH 1, Inc.)*, 2016 WL 6394296, *12 (Bankr. D. Del. Sept. 28, 2016) (quoting *Pomeranz v. Museum Partners, L.P.*, 2005 WL 217039, *3 (Del. Ch. Jan. 24, 2005) (internal punctuation omitted)).

[35] *Id.*

[36] *Id.* (quoting *Pomeranz*, 2005 WL 217039, at *3) (internal punctuation omitted).

have recognized, the issue of whose knowledge is relevant for the statute of limitations analysis - - the Debtor, shareholders, or creditors - - must be addressed.[37]

The Trustee argues that the Court should consider when non-LBO creditors acquired inquiry notice of the claims because, he contends, the parties who orchestrated the LBO controlled the post-LBO Debtor and were the only parties in a position to bring an action on behalf of the Debtor at that time.[38] In particular, the Trustee asserts that three of the pre-LBO officers stayed on as officers of the post-LBO Debtor, and New Water (also a party to the LBO Transaction) took control of the post-LBO Debtor.[39] Here, the Trustee is asserting the "adverse domination doctrine," which "provides that a statute of limitations is tolled for the period when a plaintiff is controlled by the alleged tortfeasors."[40] Delaware law, however, does not recognized the adverse domination doctrine.[41] Equitable tolling, therefore, cannot apply solely on the grounds that the culpable parties to the LBO Transaction were in control of the post-LBO Debtor. The court must consider the issue of when the plaintiff acquired "inquiry notice" of the claim (regardless of who controlled the Debtor).

---

[37] *IH 1, Inc.*, 2016 WL 6394296, * 13.

[38] Amended Compl. ¶¶ 141-143.

[39] Amended Compl. ¶¶ 125, 138-139.

[40] *Miller v. Nelson (In re Art Institute of Philadelphia, LLC)*, 2022 WL 18401591, *11 (Bankr. D. Del. Jan. 12, 2022).

[41] *Id.* (citing *IH 1, Inc.*, 2016 WL 6394296, *18 ("The Cout is persuaded that Delaware has not adopted the adverse domination doctrine and so rejects that argument to the extent it was suggested by the Trustee"); *AMC Inv.*, 524 B.R. at 81 ("It also appears that Delaware courts do not recognize adverse domination — when a corporation's board is controlled by culpable directors — as a basis for tolling a breach of fiduciary duty claim.").

The Third Circuit has stated that proper resolution of the inquiry notice issue requires careful analysis of (1) the precise nature of the claims asserted by the Trustee, (2) whether and when an objectively reasonable person would have realized the need to investigate further, and (3) what information that investigation would have disclosed.[42]

In this case, the Trustee is pursuing the breach of fiduciary duty claim as the successor to the Debtor under Bankruptcy Code § 541,[43] therefore:

> Because the trustee stands in the shoes of the debtor when bringing these claims, the trustee is subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor. Unmistakably then, if the debtor is barred from bringing the section 541 claims by the relevant statute of limitations, so too is the chapter 7 trustee. This is true despite the trustee's innocence in connection with the alleged transgressions.[44]

Thus, for a breach of fiduciary duty claim, the debtor's knowledge is generally the key to determining whether "inquiry notice" would render tolling doctrines applicable. The breach of fiduciary duty claim here was held by the post-LBO

---

[42] *IH 1, Inc.*, 2016 WL 6394296, *14 (citing *EBS Litig. LLC v. Barclays Global Inv'rs., N.A.*, 304 F.3d 302, 305 (3d Cir. 2002) (considering whether tolling applied under Delaware law)).

[43] The Court in *IH 1, Inc.*, analyzed this issue closely, writing:
Actions that may be pursued by bankruptcy trustees generally fall into two categories: (1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541, and (2) those brought under one or more of the trustee's avoiding powers. Under section 541 of the Bankruptcy Code, the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case, including whatever causes of action the debtor may have possessed prior to the petition date. Any action included in the estate under section 541 that is later pursued by a bankruptcy trustee is brought by the trustee as successor to the debtor's interest in that claim. As such, a section 541 claim is a *debtor* cause of action.
*IH 1, Inc.*, 6394296, *13 (citations and internal punctuation omitted).

[44] *Id.* (citing *Official Comm. of Unsecured Creditors v. R. F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001)). *See also AMC Inv.*, 656 B.R. at 111 ("[E]quitable tolling does not apply as Debtors knew or had reason to know of the facts constituting the wrong ..."); *Spradlin v. East Coast Miner, LLC (In re Licking River Mining, LLC)*, 599 B.R. 552, 571-72 (Bankr. E.D. Ky. 2019) (applying Delaware law).

Debtor entity and the Court should consider whether the post-LBO Debtor had inquiry knowledge of the claim. The Amended Complaint contains numerous allegations that underscore the extreme financial difficulties caused by LBO Transaction which would place the post-LBO Debtor on inquiry notice of facts that would support a breach of fiduciary duty claim against the pre-LBO officers and directors.[45]

But the Trustee argues that looking solely to the Debtor's knowledge of the claim ignores the practical realities of who may be a plaintiff in a derivative breach of fiduciary duty claim: generally, shareholders or, in the case of insolvency, creditors.[46] Courts have recognized that there are circumstances when it may be appropriate to analyze inquiry notice from the perspective of a debtor's shareholders or creditors who are the appropriate plaintiffs for the derivative claim.[47]

---

[45] The Amended Complaint alleges that the LBO Transaction devastated the Debtor's financial condition by causing the Debtor's interest and financing-related expenses to "skyrocket . . . an over five thousand percent (5,000%) increase from the prior year," and causing the Debtor to operate at a loss following the LBO Transaction. Amended Compl. ¶¶ 191-192, 194. The Amended Complaint also alleges that "[i]mmediately following the LBO Transaction, the Debtor and Debtor Affiliates encountered significant and ultimately catastrophic financial difficulties," and "[a]fter closing the LBO Transaction, the Debtor did not generate enough funds to service the LBO Obligations while also fulfilling the Debtor's other financial obligations." *Id.* ¶¶ 164-165.

[46] *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007) ("It is well settled that directors owe fiduciary duties to the corporation. When a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring *derivative* actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is *insolvent*, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims on behalf of the corporation for breaches of fiduciary duties." (emphasis in original)).

[47] *IH 1, Inc.*, 2016 WL 6394296, *16 (noting that the Delaware Court of Chancery has looked to stockholders' constructive knowledge in derivative actions asserting tolling when the stockholders are the plaintiffs in the action) (citing *Am. Int'l Grp., Inc. v. Greenberg*, 965 A.2d 763 (Del. Ch. 2009)).

Moreover, considering only the Debtor's knowledge overlooks the reasoning that underlies the tolling doctrines, which has been described as follows:

> Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of fraudulent concealment, where the plaintiff reasonably relies on the competence and good faith of a fiduciary.[48] Underlying this doctrine is the idea that even an attentive and diligent investor relying, in complete propriety, upon the good faith of fiduciaries may be completely ignorant of transactions that constitute self-interested acts injurious to the Partnership. This doctrine tolls the limitations period until an investor knew or had reason to know of the facts constituting the wrong.[49]

> Under the doctrine of inherently unknowable injuries, the running of the statute of limitations is tolled while the discovery of the existence of a cause of action is a practical impossibility. For the limitations period to be tolled under this doctrine, there must have been no observable or objective factors to put a party on notice of an injury, and plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury. Often, plaintiffs can establish "blameless ignorance" by showing justifiable reliance on a professional or expert who they have no ostensible reason to suspect of deception. This doctrine tolls the limitations period until a plaintiff had "reason to know" that a wrong has been committed.[50]

Courts have recognized that issues of tolling doctrines and inquiry notice are factually-intensive and case-specific.[51] The Amended Complaint alleges that Debtor was rendered insolvent by the LBO Transaction and that the Defendants

---

[48] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, *6 (Del. Ch. 1998) (citing *Yew v. Talley*, Del. Ch., C.A. No. 12881, at 10, Jacobs, V.C. (March 7, 1994) (Fiduciaries who benefit personally from their wrongdoing, especially as a result of fraudulent self-dealing, will not be afforded the protection of the statute of limitations.)).

[49] *Id.* (citing *Kahn v. Seaboard Corp.*, 625 A.2d 269, 275-76 (Del. Ch. 1993) (Given the fiduciary duties that the law imposes on corporate directors, stockholders are entitled to rely on the good faith of the directors when they act with respect to the corporation's property or processes), and citing *In re Maxxam, Inc./Federated Dev. Shareholders Litig.*, 659 A.2d 760, 769 (Del. Ch. 1995) (internal punctuation omitted)).

[50] *Id.* at *5 (internal punctuation and citations omitted).

[51] *Ontario Prov. Council of Carpenters' Pension Trust Fund v. Walton*, 294 A.3d 65, 96-97 (Del. Ch. 2023); *Perelman*, 414 F.3d at 441.

engaged in self-dealing.[52]  It is not clear whether there were sufficient facts to

constitute notice of derivative breach of fiduciary duty claims to those entitled to

assert them.  The matter before the Court is a motion to dismiss the Amended

Complaint.  At this stage, the parties should proceed with discovery and, if

appropriate, revisit the limitations issue on summary judgment.[53]

> 2. <u>Whether the Amended Complaint adequately pleads a breach of fiduciary</u>
>    <u>duty claim against the Moving Defendants.</u>

The Moving Defendants argue that the Amended Complaint fails to state a

breach of fiduciary duty claim because it uses improper "group pleadings" by

lumping all the Defendants together as "D&Os" and broadly alleges that those

"D&Os" acted wrongfully and harmed the Debtor.  The Trustee argues in response

that the Amended Complaint provides sufficient notice to the Defendants of the

alleged wrongful conduct (i.e., approving and facilitating the LBO Transaction), and

the Trustee also asserts that the significant details alleged about the LBO

Transaction provide context for the wrongful actions and the resulting harm to the

Debtor and its stakeholders and creditors.

To state a claim for breach of fiduciary duty, "the Trustee must plead

sufficient facts showing both the existence of a fiduciary duty and that the fiduciary

---

[52] *See, e.g.*, Amended Compl. ¶¶ 297 – 304, 306-307, 316-317.

[53] *IH 1, Inc.*, 2016 WL 6394296, *9 (deciding that "the [law of the case] doctrine does not preclude a grant of summary judgment in favor of a defendant whose motion to dismiss had been previously denied, as the court must now take into consideration evidence that has been developed through discovery.") (citations and internal punctuation omitted). *See also Am. Int'l Grp.*, 965 A.2d at 812 n. 186 (noting that the defendants could renew their limitations defense on summary judgment if they had actual proof of inquiry notice).

breached that duty."[54]  Under Delaware law, breach of fiduciary duty claims may be dismissed when the complaint lumps individual defendants together as "Officers and Directors" without supplying specific facts about: (i) each defendant's wrongdoing, (ii) which transactions a particular defendant authorized, and (iii) what authority a particular defendant had to approve such transactions.[55] However, Delaware Courts may reject the defendants' "group pleading" contentions "when the complaint identifies the 'dates, parties, and actions or inactions' of the defendants which were 'sufficient to put them on notice of the specific conduct that give rise to the breach of fiduciary claims asserted against them.'"[56]

Here, the Moving Defendants argue that the Amended Complaint identifies the Defendants' roles in terms that are too broad by alleging that each individual defendant was "an officer and/or director of the Debtor, or of the Debtor's prior or current affiliates or related entities, prior to and/or at the time of the LBO Transaction."[57]  The Trustee defends the general description by claiming that the pre-LBO Debtor, along with Catterton and the Catterton SPVs, owned one another and were controlled by the same group of people and were not separate entities in any meaningful sense[58] and he argues that he should be permitted to conduct

---

[54] *Miller v. Anconnect, LLC (In re Our Alchemy, LLC)*, 2019 WL 4447541, *10 (Bankr. D. Del. Sept. 16, 2019) (citing *Beskrone v. OpenGate Capital Grp. (In re PennySaver USA Publ'g, LLC)*, 587 B.R. 445, 463-64 (Bankr. D. Del. 2018)).

[55] *Balasiano v. Borell (In re Furniture Factory Ultimate Holding, L.P.)*, 2023 WL 5662747, *10 (Bankr. D. Del. Aug. 31, 2023) (citing *Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC)*, 514 B.R. 405, 414 (Bankr. D. Del. 2014) (internal punctuation omitted)). *See also Burtch v. Zachem*, 2023 WL 6140247, *3 (Bankr. D. Del. Sept. 19, 2023) (same).

[56] *Furniture Factory*, 2023 WL 5662747, *10, n. 92 (collecting cases).

[57] Amended Compl. ¶¶ 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 34, and 36.

[58] As support for this argument, the Trustee cites to the Amended Compl. ¶¶ 61-64.  The Catterton Defendants reply, however, that the Amended Complaint asserts veil-piercing and

discovery to gain a full picture Defendants' officer and director positions with the Debtor and other Catterton entities.

The Trustee further argues that the Amended Complaint is detailed enough to provide each Defendant with notice of the dates of the alleged wrongful actions, the alleged wrongful conduct, and the alleged effects of the wrongful conduct. In short, each individual Defendant is claimed to have used a position of control in or around September 2016 to approve or facilitate the LBO Transaction, consisting of the Stock Purchase Agreement and the accompanying loan agreements, to further his or her own interests while resulting in serious harm to the Debtor and its non-LBO stakeholders and creditors.

The Amended Complaint is not a model of clear and precise allegations for a breach of fiduciary duty claim. However, the Court is satisfied that Amended Complaint's allegations state enough details about the specific time frame, the specific transactions approved by the Defendants, and the specific harm caused by the Defendants' alleged wrongful conduct to provide adequate notice of the claims to the Defendants.

The Catterton Defendants further argue that the Amended Complaint fails to adequately state a breach of fiduciary duty claim against them because (i) all the

---

substantive consolidation claims against the *Worth Entities* (defined in the Amended Complaint as (i) NWC Worth Collection Holdings, LLC ("NWCWCH"), (ii) Worth Investment Holdings ("WIH") (an entity wholly owned by NWCWCH), and (iii) Worth Collection Intermediate Holdings, LLC ("Worth Intermediate") (the "purchaser" in the LBO Transaction, an entity wholly owned by WIH)). Amended Compl. ¶¶ 96, 103, and 129. The Catterton Defendants argue that the Trustee cannot amend his complaint through his brief, alleging claims of veil-piercing or consolidation of undefined entities with "Catterton" in their names. The Court notes that the Trustee is not asserting a consolidation claim or piercing the corporate veil claim against Catterton; he is asking for discovery to assist in sorting out the various entities and the Defendants' roles therein.

directors are protected by an exculpatory provision in the Debtor's corporate charter; and (ii) the Trustee fails to plead a non-exculpated claim for breach of the duty of loyalty against them. In response the Trustee argues that asserting protection under an exculpatory provision is an affirmative defense that the Court should not consider on a motion to dismiss. Further, the Trustee argues that the Amended Complaint pleads adequate breach of fiduciary duty claims by alleging that the Defendants acted in bad faith and in furtherance of their own self-interests in approving and facilitating the LBO Transaction.

Delaware law imposes the following fiduciary duties on officers and directors of a Delaware corporation:

(1)     The "duty of care" has been described as the duty to act on an informed basis. To prove a breach of the duty of care, a plaintiff must demonstrate gross negligence.

(2)     The "duty of loyalty" mandates that the best interests of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally. To prove a breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred and the transaction was unfair to the shareholders.

(3)     The "duty of good faith" is a subsidiary element of the fundamental duty of loyalty. The Delaware Supreme Court has recognized three non-exclusive categories of conduct indicative of a failure to act in good faith (i) a director intentionally acts with a purpose other than that of advancing the best interests of the corporation; (ii) a director acts with the intent to violate applicable positive law; or (iii) a director intentionally fails to act

16

in the face of a known duty to act, demonstrating a conscious disregard for his duties.[59]

The Defendants assert that the Debtor's Certificate of Incorporation (attached as Exhibit A to the Catterton Defendants' Motion to Dismiss) contains an exculpation provision stating:

> The personal liability of the Directors of the Corporation to the Corporation or its stockholders for monetary damages is hereby eliminated to the fullest extent permitted under Section 102(b)(7) of the General Corporation Law of the State of Delaware.

Courts have recognized that Section 102(b)(7) of the Delaware General Corporation Law permits a corporation "to protect its directors from monetary liability for duty of care violations, i.e., liability for gross negligence," by including an exculpation clause in its certificate of incorporation.[60] The parties agree that there is a split of authority among Delaware federal courts as to whether a Section 102(b)(7) exculpatory clause may be properly raised at the motion to dismiss stage.[61] The Court has already determined that it is appropriate to allow the Trustee to engage in discovery and sort out the roles of the Defendants with the pre-LBO

---

[59] *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 41 (Bankr. D. Del. 2011) (citations and internal punctuation omitted)).

[60] *The Off'l Comm. of Unsecured Creditors v. Nat'l Amusements Inc. (In re Midway Games, Inc.)*, 428 B.R. 303, 316 (Bankr. D. Del. 2010) (quoting 5 Balotti & Finkelstein, *The Delaware Law of Corporations and Business Organizations*, Ch. 4, § 4.19, p. 200.10 (1986)).

[61] *Compare Midway Games*, 428 B.R. at 317 (dismissing a claim upon deciding that the Committee's complaint did not have sufficient facts to create a plausible claim that the director defendants violated their duty of care and, to the extent the directors did so, the exculpation clause shielded them from liability), and *In re Fedders N. Am., Inc.*, 405 B.R. 527, 543 (Bankr. D. Del. 2009) (dismissing a claim against director defendants when the debtor's "certificate of incorporation exculpates Fedders' directors from paying monetary damages for breaching the duty of care . . . and Plaintiff seeks only monetary damages for this breach") *with Miller v. McCown De Leeuw & Co., Inc. (In re The Brown Schools)*, 368 B.R. 394, 402 (Bankr. D. Del. 2007) ("The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at this stage.").

Debtor and related entities. Based upon these circumstances at this stage of the proceeding, the Court will not consider the exculpation provision's effect on the claims for breach of the duty of care.

The Trustee also argues, however, that even if the exculpation clause prevents him from pursuing claims for breaching the duty of care, the exculpation clause cannot block him from pursuing claims for breaching the duty of loyalty. He asserts that numerous allegations in the Amended Complaint support a breach of the duty of loyalty claim. For example: asserting that the Defendants "acted in their own interests" when approving the LBO Transaction because the Defendants "received cash proceeds," or "received transaction bonuses," or "received a release of loan obligations."[62]

The Catterton Defendants, however, claim that the Amended Complaint fails to adequately plead that they were self-interested in or otherwise benefitted from LBO Transaction because there are no allegations that any of the Catterton Defendants received any cash distributions, transaction bonuses, or forgiveness of loan obligations.[63] There are no allegations that the Catterton Defendants received any improper personal benefits from the LBO Obligation.

While there are no allegations that the Catterton Defendants received direct payouts or benefits from the LBO Transaction, there are allegations that the pre-

---

[62] Amended Compl. ¶¶ 119-120, 123-124, 128, 297-298, 300-312.

[63] The "Catterton Defendants" (*see* n. 5, *supra.*) are not included as part of the "Former Equity Holders," as that term is defined in the Amended Complaint who received distributions from the LBO Transaction.

LBO Debtor was controlled by Catterton-owned entities.[64] In particular, the Amended Complaint alleges that Worth Acquisition — controlled by Catterton-entity CMPV — received the lion's share of the Closing Distributions in the amount of over $31 Million.[65] Consistent with the Court's earlier decision, the Court will allow the Trustee to conduct discovery to sort out the relationships between the Catterton Defendants and the Catterton entities that owned and controlled the pre-LBO Debtor and its affiliates. Therefore, based on these circumstances and at this stage of the proceeding, the Court will not dismiss the breach of fiduciary duty claims asserted against the Catterton Defendants.

3. Whether the Amended Complaint adequately pleads facts showing that the Debtor was insolvent and, thus, owed fiduciary duties to creditors.

"[T]he creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties."[66] The Moving Defendants argue that the Amended Complaint fails to plead facts showing that the Debtor was insolvent at the time the LBO Transaction was approved and, therefore, owed fiduciary duties to creditors. In response, the Trustee asserts that insolvency is a factual issue and should not be addressed in a motion to dismiss. Regardless, the Trustee also claims that the

---

[64] Amended Compl. ¶¶ 63-68.
[65] Amended Compl. ¶¶ 63, 120.
[66] *Gheewalla*, 930 A.2d at 101.

allegations in the Amended Complaint are sufficient to establish that the LBO

Transaction caused the Debtor's insolvency.

"Insolvency is adequately pled if plaintiff's allegations allow a reasonable

inference of either '(1) a deficiency of assets below liabilities with no reasonable

prospect that the business can be successfully continued in the face thereof or (2) an

inability to meet maturing obligations as they fall due in the ordinary course of

business.'"[67]   The Trustee is not required to prove insolvency in the context of a

motion to dismiss.[68]  Instead a plaintiff must allege sufficient facts to provide notice

of the basis of a plausible claim that the Debtor was insolvent.

Here, the Amended Complaint asserts that the Debtor became insolvent

when the LBO Transaction harmed the Debtor financially by leaving it

inadequately capitalized or unable to pay its debts as they come due.  For example,

the Amended Complaint alleges:

- Upon the closing of the LBO Transaction, the Debtor was obligated for over $25,000,000 in debt.[69]

- The staggering debt resulting from the LBO Transaction caused the Debtor's interest and financing related expenses to skyrocket to $1,760,000 in 2016 – an over five thousand percent (5,000%) increase from the prior year, despite closing of the LBO Transaction occurring after approximately nine of the twelve months in that calendar year.[70]

---

[67] *Gheewalla,* 930 A.2d at 98.  *See also In re Opus East, LLC,* 528 B.R. 30, 51 (Bankr. D. Del. 2015) (To prove insolvency, a plaintiff must demonstrate that at the time of each of the challenged transfers, the debtor was balance sheet insolvent, inadequately capitalized, or unable to pay its debts as they came due.).

[68] *In re PennySaver USA Publishing, LLC,* 587 B.R. 445, 459 (Bankr. D. Del. 2018) ("A motion to dismiss is not the proper place to bring in experts to determine insolvency.").

[69] Amended Compl. ¶ 189.

[70] Amended Compl. ¶ 191.

- The Debtor operated at a net loss of $1,610,000 in 2016.[71]

- In 2017 the Debtor's interest and financing related expenses increased to $2,483,000.[72]

- The Debtor operated at a net loss of $9,317,000 in 2017, the first calendar year after the LBO Transaction.[73]

- The Debtor had approximately $12 million in cash and cash equivalents at the end of 2014.[74]

- Th Debtor had almost $5 million in cash and cash equivalents at the end of 2015.[75]

- The Debtor's cash dwindled to $445,000 in cash and cash equivalents at the end of 2016.[76]

- The Debtor's cash position at the end of 2017 was lower than its cash position at the end of 2016.[77]

- The LBO Transaction amounted to a windfall payout to the Debtor's Former Equity Holders, with the Debtor picking up the tab in the form of $25 million in debt and leaving the Debtor's creditors at risk, maintaining a bleak amount of operating cash in relation to its significant post-LBO Transaction debt obligations, and pledging all of its assets as security for the newly-incurred debt.[78]

- Notwithstanding the Debtor's dire financial condition following the LBO Transaction, New Water continued to drain the insolvent Debtor of resources through the Consulting Fees and the New Water Transfers.[79]

---

[71] Amended Compl. ¶ 192.
[72] Amended Compl. ¶ 193.
[73] Amended Compl. ¶ 194.
[74] Amended Compl. ¶ 195.
[75] Amended Compl. ¶ 196.
[76] Amended Compl. ¶ 197.
[77] Amended Compl. ¶ 198.
[78] Amended Compl. ¶ 200.
[79] Amended Compl. ¶ 201.

- Of the $45,279,000 of Closing Distributions, after $2,373,966.22 was used to pay off certain indebtedness, the Debtor was left with a paltry $1,058,178.92 of cash to sustain all of its operating expenses and massive debt service on a going-forward basis.[80]

- The Defendants were aware of the Debtor's financial condition prior to the LBO Transaction and understood that saddling the Debtor with over $25,000,000 in debt, upon the closing of the acquisition of the Debtor by NWC, would render the Debtor insolvent.[81]

For purposes of a motion to dismiss, these allegations are sufficient to support the Trustee's claim that the LBO Transaction caused the Debtor to become insolvent.

4. Whether the remaining claims for declaratory judgment must be dismissed?

The Moving Defendants argue that Counts I, II, and III (for substantive consolidation of the Worth Entities, Piering the Corporate Veil against the Worth Entities, and collapsing transactions that were part of the LBO Transaction) should be dismissed because those claims are not asserted against the Defendants. The Trustee objects to dismissal of those claims, arguing that the Amended Complaint alleges that the Defendants may also be officers or directors of the Worth Entities, which the Trustee alleges were inextricably intertwined with the Debtor. The Trustee claims discovery is needed to determine whether any Defendants were officers or directors of the overlapping entities, thereby owing fiduciary duties to the

---

[80] Amended Compl. ¶ 204.
[81] Amended Compl. ¶ 205.

Debtor.  Recognizing the Trustee's need for more discovery in this matter (as discussed above), the Court will not dismiss Counts I, II or III at this stage of the proceeding.

CONCLUSION

For the reasons set forth above, the Motions to Dismiss the Amended Complaint filed by the Catterton Defendants, the Davis Group Defendants, and Kelly Collins will be denied.  An appropriate Order will issue.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated: June 18, 2026